1  Damon M. Pitt (SBN 291473)
2  damon.pitt@klgates.com
   K&L GATES LLP
3  1 Park Plaza, Twelfth Floor
   Irvine, CA 92614
4  Telephone: +1 949 253 0900
   Facsimile: +1 949 253 0902

5  Attorneys for Petitioner
6  Epson America, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EPSON AMERICA, INC., | Case No. 8:23-cv-01735 |
| Petitioner, | |
| v. | **EPSON AMERICA, INC.'S NOTICE OF PETITION AND PETITION TO VACATE ARBITRATION AWARD** |
| KADAKIA INTERNATIONAL, INC., | |
| Respondent. | |

# NOTICE OF PETITION AND PETITION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on date set by the court the matter may be heard, at the United States District Court for the Central District of California, Southern Division, Petitioner Epson America, Inc. ("Epson") will and hereby does move this Court for an Order, pursuant to Section 10 of the Federal Arbitration Act ("FAA"), 9 U.S.C. section 1 *et seq.*, vacating the arbitration award ("Final Award") issued pursuant to the rules of arbitration of the American Arbitration Association, in favor of Respondent Kadakia International, Inc., in AAA Case No. 01-20-0015-6801.

The Court should vacate the Final Award and vacate the judgment pursuant to Section 10 of the FAA because the Court has jurisdiction, the Petition to Vacate was timely filed, and grounds exist to vacate the Final Award. Further, the Court should remand this matter to the American Arbitration Association for an evidentiary hearing before a newly-appointed arbitrator.

The Petition to Vacate is supported by the accompanying Memorandum of Points and Authorities, the Declaration of Jack S. Brodsky and such other evidence and argument as may be presented on this Petition to Vacate.

Petitioner Epson America, Inc. ("Epson") hereby petitions this Court to vacate the July 13, 2023 Amended Final Award ("Final Award") issued by arbitrator Mary S. Jones ("Arbitrator") acting under the Rules of Arbitration of the American Arbitration Association ("AAA") in the arbitration proceeding styled *Kadakia International, Inc. v. Epson America, Inc.*, AAA Case No. 01-20-0015-6801 (the "Arbitration"), which was issued in favor of Respondent Kadakia International, Inc. ("Kadakia" or "Respondent"). Epson further requests that this Court grant such other relief as necessary, including, but not limited to, remand this matter to the AAA for an evidentiary hearing before a newly-appointed arbitrator.

## THE PARTIES

1.  Petitioner Epson America, Inc. is a California corporation with a principal place of business located at 3131 Katella Ave, Los Alamitos, CA 90720.

2.  Respondent Kadakia International, Inc. is a New Jersey corporation with a principal place of business located at 660 Montrose Avenue, South Plainfield, NJ 07080.

## JURISDICTION AND VENUE

3.  The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because Epson and Kadakia are citizens of different states, and the amount in controversy—the total amount awarded in Kadakia's favor in the Arbitrator's Final Award, which Epson now seeks to vacate—exceeds $75,000. *See Badgerow v. Walters*, 142 S. Ct. 1310 (2022).

4.  The Court has personal jurisdiction over Kadakia in this action because it agreed to—and did—arbitrate its disputes with Epson in Los Angeles, California. *See* to the Declaration of Jack S. Brodsky ("Brodsky Decl."), ¶ 5, Ex. A, Section 8.2.

5.  Venue is proper in this District under 9 U.S.C. § 10 as a petition to vacate an award made be made "in and for the district wherein the award was made."

## FACTUAL BACKGROUND

### A. Purchase and Sale of the SUREPRESS

6. Epson is a leading manufacturer in the printer, professional imaging, projector, scanner, system devices, and factory automation categories. Epson sells its products across North America. Brodsky Decl., ¶ 4.

7. In July of 2016, Kadakia inquired about the purchase of an EPSON Seven-Color SUREPRESS L-4033AW Digital Color Label Press, Rewinder, and Epson A3 Scanner ("SUREPRESS"). Brodsky Decl., ¶ 6, Ex. B.

8. The parties thereafter engaged in discussions regarding the SUREPRESS, and on September 6, 2016, Kadakia purchased the SUREPRESS from Epson for a purchase price of $189,500.00 by entering into and executing a Purchase and Service Agreement with Epson, dated September 6, 2016 (the "Agreement"). Brodsky Decl., ¶ 5, Ex. A.

### B. The Purchase and Sale Agreement

9. The Agreement contains various warranties on behalf of Epson, as well as certain risk allocation provisions, including limitation of liability provisions. Brodsky Decl., ¶ 5, Ex. A.

10. Specifically, Section 2 of Attachment C to the Agreement sets forth "What is Covered" by Epson's Limited Warranty of the SUREPRESS. Section 2 states:

> **2. What is Covered**. Epson warrants to Company… that the Equipment, including its hardware and Software, if used in the United States, will conform to the Specifications and will be free from defects in workmanship and materials for a period of one year from installation (the "Warranty Period").

Brodsky Decl., ¶ 5, Ex. A, Attachment C, Section 2.

11. The Agreement further adds various issues <u>not</u> covered by the Limited Warranty set forth in Section 2. Specifically, Section 5 of Attachment C provides, in relevant part:

> **5. What This Warranty Does Not Cover.** This warranty does not cover any of the following….
>
> - Any problem or damage due to the quality of media used. This may include, for example, damage to the Press's print head caused by media imperfections such as variations in thickness; or by improper storage of media before use in the Press; or by improper installation of setting of media in the Press.

Brodsky Decl., ¶ 5, Ex. A, Attachment C, Section 5.

12. Additionally, Section 8 of Attachment C includes an express agreement between the Parties that "any action for breach of warranty must be brought within six months after the cause of action arises." Brodsky Decl., ¶ 5, Ex. A, Attachment C, Section 8.

13. Section 8 also includes a limitation of liability limiting Kadakia's recoverable damages to the purchase price of the SUREPRESS and prohibiting Kadakia from recovering certain damages, including, but not limited to, lost profits and incidental or consequential damages. Specifically:

> **8. Maximum Liability and Other Terms.** Epson's entire liability for a material breach of this warranty will be limited to the price paid for the Equipment (excluding tax). Any action for breach of warranty must by brought within six months after the cause of action arises. Epson is not liable for performance delays or for nonperformance due to causes beyond its reasonable control. Except as provided in this written warranty, neither Epson, nor its affiliates shall be

liable for any loss, inconvenience, or damage, including direct, special, incidental or consequential damages, including lost profits, cost of substitute equipment, downtime, claims of third parties, including customers or injury to property, resulting from the use or inability to use the Epson products, whether resulting from a breach of warranty or any other legal theory....

Brodsky Decl., ¶ 5, Ex. A, Attachment C, Section 8.

14. The terms set forth in Section 8 of Attachment C are mirrored elsewhere in the Agreement as well. Paragraph 7 of the Agreement states:

> **7. Limitation of Liability.** IN ANY INSTANCE WHERE COMPANY IS ENTITLED TO RECOVER DAMAGES FROM EPSON OR ANY AFFILIATE, WHETHER BECAUSE OF A DEFAULT BY EPSON UNDER THIS AGREEMENT OR FOR ANY OTHER REASON, THEN, REGARDLESS OF THE BASIS ON WHICH COMPANY IS ENTITLED TO CLAIM DAMAGES (INCLUDING BREACH, NEGLIGENCE, MISREPRESENTATION, OR OTHER CONTRACT OR TORT CLAIM), THE MAXIMUM LIABILITY OF ALL EPSON ENTITIES SHALL BE THE PRICE PAID BY COMPANY FOR THE EQUIPMENT (EXCLUDING TAX). IN NO EVENT SHALL EPSON OR ITS AFFILIATES BE LIABLE FOR SPECIAL, INCIDENTAL, OR INDIRECT DAMAGES OR FOR ANY ECONOMIC CONSEQUENTIAL DAMAGES (INCLUDING LOST PROFITS OR SAVINGS), EVEN IF INFORMED OF THEIR POSSIBILITY.

Brodsky Decl., ¶ 5, Ex. A, Paragraph 7.

15. Additionally, Section 7 of Attachment C to the Agreement specifically disclaims all express or implied warranties not set forth in the Agreement:

> **7. Disclaimer of Warranties and Remedies.** THE WARRANTY AND REMEDY PROVIDED IN THIS ATTACHMENT ARE EXCLUSIVE AND IN LIEU OF ALL OTHER EXPRESSED OR IMPLIED WARRANTIES INCLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND NON-INFRINGEMENT. UNLESS STATED HEREIN, ANY STATEMENTS OR REPRESENTATION MADE BY ANY OTHER PERSON OR FIRM ARE VOID.

Brodsky Decl., ¶ 5, Ex. A, Attachment C, Section 7.

16. Ultimately, Epson delivered the SUREPRESS to Kadakia at its South Plainfield, New Jersey location in November 2016. Brodsky Decl., ¶ 6, Ex. B.

17. On October 29, 2018, Kadakia sent a demand letter to Epson claiming that "[f]rom the first day of receiving the [SUREPRESS], it never performed as promised." Specifically, Kadakia alleged that the SUREPRESS did not print on Kadakia's media and that there were "all types of issues with the media utilized." Brodsky Decl., ¶ 7, Ex. C.

18. However, contemporaneous records kept in the ordinary course of Epson's business indicate that Kadakia did, in fact, obtain commercial benefit from the use of the SUREPRESS until it reported issues to Epson in October 2018.

19. For example, Epson's Remote Monitoring System, which tracked the usage of Kadakia's SUREPRESS, indicated substantial print volume and ink consumption beginning in 2016 through 2018. Brodsky Decl., ¶ 8, Ex. D.

20. Further, Epson's email records retained in its SalesForce database confirm that on July 6, 2018, Epson's Sales Manager, Roy Pagan, wrote to Kadakia that

Epson's records indicated it "ha[d] been busy printing on the SurePress." Brodsky Decl., ¶ 8, Ex. D.

21. Additionally, on July 23, 2018, a representative of Kadakia wrote to Epson: "***Things are okay with Surepress***. The [rewinder] unit needs some tuning, I will be placing a service call soon. ***It prints [] fantastic***. Hopefully Mr[.] Kadakia decides to expand his printing setup soon. Lets [sic] see." Brodsky Decl., ¶ 8, Ex. D.

## C. The New Jersey Litigation

22. On April 28, 2019, Kadakia filed a complaint in the Superior Court of New Jersey, contrary to the requirements of the mandatory arbitration provision in the Agreement, asserting six claims against Epson: (1) breach of express warranties; (2) breach of implied warranty; (3) breach of risk of loss; (4) incidental and consequential damages; (5) breach of contract; and (6) common law bad faith and fair dealing. The lawsuit filed by Kadakia was captioned *Kadakia International, Inc. v. Epson America, Inc., et al.*, Docket No. MID-3335-19.

23. On July 12, 2019, the Court entered an Order Granting Epson's Motion to Dismiss in light of the mandatory arbitration provision in the parties' Agreement.

## ARBITRATION PROCEEDINGS

## A. Epson's Motion for Summary Adjudication

24. More than a year later, Kadakia filed a Demand for Arbitration with the AAA on October 26, 2020. In its Demand for Arbitration, Kadakia asserted claims for "[c]ommercial breach of contract, express warranties and implied warranties [r]esulting in incidental and consequential damages."

25. After an unsuccessful mediation, the parties proceeded with the Arbitration. In an August 25, 2021 Scheduling Order, the Arbitrator ordered that Kadakia, on or before September 17, 2021, "file a detailed statement of claims and all damages being sought with particularity as to each claim, the specific types of damages and exact amount being sought for each, along with the detailed facts and legal basis, in support thereof." Kadakia did not meet this deadline.

26. Kadakia did not file a Detailed Statement of Claim until October 22, 2021, which it later amended on November 8, 2021. Brodsky Decl., ¶ 6, Ex. B. Kadakia's belatedly-filed Statement of Claim contains six claims for: 1) breach of express warranty; 2) breach of implied warranty; 3) effect of breach on risk of loss; 4) incidental and consequential damages; 5) breach of contract; and 6) common law bad faith and fair dealings.

27. Pursuant to Rule R-34 of the AAA Commercial Rules, "[t]he arbitrator may allow the filing of and make rulings upon a dispositive motion" with the purpose to "dispose of or narrow the issues in the case."[1] Accordingly, on November 7, 2021, the parties consented and stipulated to the filing of dispositive motions in this dispute (the "Stipulation"). Brodsky Decl., ¶ 9, Ex. E.

28. Pursuant to the Stipulation, the Arbitrator set forth the parties' dispositive motion briefing schedule in her December 20, 2021 and March 2, 2022 Scheduling Orders, which included the filing of: 1) a joint statement of undisputed facts, 2) a joint stipulation of disputed issues to be resolved, 3) opening brief by a moving party, 4) a response brief, and 5) a reply brief. Brodsky Decl., ¶¶ 10-11, Ex. F & G.

29. At no time did the parties ask the Arbitrator to resolve the entire matter on the briefs.[2] Instead, the parties sought summary adjudication of specific legal claims.

30. On April 7, 2022, the parties submitted a Joint List and Statement of Stipulated Issues to be Resolved by Summary Adjudication identifying four *legal* issues to be resolved by summary adjudication:

---

[1] Rule R-33 of the AAA Consumer Rules includes similar language.

[2] While the Arbitrator's Final Award notes that "[t]he Parties initial request for summary adjudication sought legal and factual determinations relating to the Parties' competing positions on breach of the Agreement, whether Respondent made express warranties about the SUREPRESS, the effect of disclaimer statements in the Parties' Agreement, and the validity of limitations on damages for breach of the Parties' Agreement," this statement is belied by the procedural history of this case, as well as the very nature of the *legal* issues before the Arbitrator and recited in the foregoing sentence. There can be no dispute that Epson's motion for summary adjudication sought resolution of four *legal* issues and did not invite the Arbitrator to make determinations of *fact*.

      i. Whether Kadakia's claim[3] that the SUREPRESS was purportedly unable to print on Kadakia's intended media constitutes a breach of the Agreement between the Parties?

      ii. Whether Epson's statements prior to the execution of the Agreement amount to an express warranty that the SUREPRESS would print on Kadakia's intended media?

      iii. Whether the Agreement (see Attachment C, Section 7 of the Agreement) effectively disclaims any implied warranties or representations not incorporated in the Agreement?

      iv. Whether the limitation of liability provisions of the Agreement (see Paragraph 7 and Attachment C, Section 8 of the Agreement) effectively limit Kadakia's recoverable damages to the price it paid for the SUREPRESS?

Brodsky Decl., ¶ 12, Ex. H.

    31. The parties believed that resolution of these specific *legal* issues would assist in narrowing the scope of the issues and assist in efforts to settle the dispute.

    32. On April 14, 2022, the parties submitted a Joint Stipulation of Undisputed Facts identifying **only three undisputed facts** relevant to deciding the legal issues and attaching the operative Purchase and Sale Agreement:

      i. On September 6, 2016, Kadakia purchased the SUREPRESS from Epson for a purchase price of $189,500.00.

      ii. The parties entered into and executed a Purchase and Service Agreement with Epson, dated September 6, 2016….

      iii. Epson delivered the SUREPRESS to Kadakia at its South Plainfield, New Jersey location in November 2016.

---

[3] As the language makes clear, at no time did Epson concede that Kadakia's claim was true. Indeed, it is undisputed that the Parties were simply asking the Arbitrator to make a legal ruling whether the *claim* itself was legally sufficient to support a breach of contract claim.

1  Brodsky Decl., ¶ 13, Ex. I.

2  33.  Based upon these undisputed facts, Epson submitted its Opening Brief in Support of Motion for Summary Adjudication on April 28, 2022. Brodsky Decl., ¶ 14, Ex. J. The crux of Epson's argument was that, based upon the undisputed facts of the case, no triable issue of fact existed as to Kadakia's causes of action, the Arbitrator could decide each of the four disputed *legal* issues in Epson's favor, and, accordingly, Epson was entitled to judgment on each of Kadakia's claims as a matter of law.

34.  The entire process discussed above, culminating in Epson's Opening Brief, was designed to resolve identified issues *as a matter of law*. For example, Epson contended that the alleged statement "It works fine" could never, as a matter of law, be an express warranty. At no time did Epson invite the Arbitrator to make factual determinations. Instead, the parties only sought legal determinations needed to assist in narrowing the scope of the dispute.

**B.  The Arbitrator's Order and Final Award**

35.  On August 18, 2022, the Arbitrator issued her Ruling on the Parties' Stipulated Requests for Summary Adjudication (the "Order"). Brodsky Decl., ¶ 15, Ex. K.

36.  The Arbitrator's Order unquestionably exceeded the scope of authority granted by the parties, as she *resolved factual issues in dispute* and entered judgment on liability in Kadakia's favor. Beyond the three undisputed facts jointly submitted by the parties, Epson was never afforded an opportunity to put its evidence into the record for the Arbitrator's consideration.

37.  Despite not affording Epson an opportunity to submit evidence, the Arbitrator's Order clearly—and improperly—made a number of factual findings.

38.  For example, Kadakia alleged in its Detailed Statement of Claim that "[t]he SUREPRESS was unable to print on the media intended as initially promised by Epson." Epson denied the allegation in its Answering Statement, creating a factual dispute. ***Despite this***, the Arbitrator concluded in her Order:

> ***There is no dispute*** the SUREPRESS did not work with Kadakia 120ASBX [sic] media.

Brodsky Decl., ¶ 15, Ex. K, at 6-7 (emphasis added).

39. Epson never conceded that the SUREPRESS did not work with Kadakia's intended media in its briefing, arguing that evidence in the record confirmed that the SUREPRESS ***did*** work for nearly two years after delivery. Epson's argument on summary adjudication was that, notwithstanding any purported issues with the SUREPRESS, Kadakia's breach of contract ***failed as a matter of law*** because the parties' Agreement contained an express disclaimer of any promise that the SUREPRESS would work on certain media.

40. The Arbitrator's premature decision regarding the factual issue at the heart of the parties' dispute was improper.

41. The Arbitrator made a number of improper factual findings in her Order, including:

    i. "The evidence presented about Kadakia's requirement for the SUREPRESS is not vague. The emails between the Parties clearly establish that Claimant sought a determination prior to purchasing the SUREPRESS, as to whether Kadakia's 210ASBX media will work on the printer Mr. Kadakia was interested in purchasing." Brodsky Decl., ¶ 15, Ex. K, at 6.

    ii. "[I]t would seem that if anyone knew or should have known that a substrate of 2 mil did not meet the SUREPRESS specification, it would have been Epson, who wrote the specifications and Mr. Gomez, since he was actually told by Mr. Kadakia on July 27, 2016, that Kadakia was sending 210ASBX media to Epson for testing." Brodsky Decl., ¶ 15, Ex. K, at 6.

    iii. "The evidence indicates, Kadakia relied upon Mr. Gomez's positive affirmative that Kadakia's 210ASBX media "worked fine" with the

SUREPRESS, and thereafter Kadakia purchased the SUREPRESS based upon such representation." Brodsky Decl., ¶ 15, Ex. K, at 6.

    iv. "The facts clearly show that Epson made a contradictory express warranty, thus Epson's disclaimer of express warranties found in the Agreement is unreasonable under Cal. Com. Code § 2313 and, unenforceable." Brodsky Decl., ¶ 15, Ex. K, at 6.

    v. "[I]t has already been determined Epson made affirmative representations in the form of an express warranty that went to the basis of Claimant's bargain, leading to Kadakia's decision to purchase the SUREPRESS. Such express warranties were not accurate." Brodsky Decl., ¶ 15, Ex. K, at 9.

42. Again, Epson's motion for summary adjudication did not invite the Arbitrator to make factual findings. It is undisputed that the parties only submitted three undisputed facts for purposes of the motion.

43. If the Arbitrator found there to be factual issues in dispute—which is clear from the Order that she did—then the Arbitrator's sole course of action **was to deny Epson's motion** and set the dispute for an evidentiary hearing.

44. By making determinations of fact at the summary judgment phase, the Arbitrator's Order precluded Epson—as well as Kadakia—from presenting and cross-examining critical witnesses during an evidentiary hearing to determine the credibility of the evidence in the record.

45. For example, critical to the Arbitrator's decision was:
> The evidence indicates, Kadakia relied upon Mr. Gomez's positive affirmative that Kadakia's 210ASBX media 'worked fine' with the SUREPRESS, and thereafter Kadakia purchased the SUREPRESS based upon such representation.

Brodsky Decl., ¶ 15, Ex. K, at 6. However, the Arbitrator did not allow for examination and cross-examination of key witnesses in this case, including Mr. Kadakia and Mr. Gomez. The Arbitrator did not allow for witness testimony and/or cross-examination to determine 1) what Mr. Kadakia understood and/or how he relied upon Mr. Gomez's statement; and 2) what Mr. Gomez meant by that statement and/or the context surrounding that statement.

46. Following issuance of her Order, the Arbitrator sought briefing and oral argument on "remaining issues," including a determination of damages and the amount of attorneys' fees and costs.

47. After submitting opening briefs as to the total award, oral argument was scheduled and conducted on December 12, 2022. As Kadakia failed to support its motion for total award, the Arbitrator allowed Kadakia additional briefing and continued oral argument on the issue. During the December 12, 2022 hearing, counsel for Epson requested a hearing on whether the Arbitrator exceeded her authority by making improper factual determinations in her Order. Brodsky Decl., ¶ 16, Ex. L, at p. 4 n.7.

48. On January 18, 2023, Epson submitted a letter motion requesting "that the portion of the Arbitrator's Order that relied upon the Arbitrator's improper factual determinations be vacated, and this matter be scheduled for an evidentiary hearing to resolve the outstanding factual disputes relating to Kadakia's claims." Brodsky Decl., ¶ 17, Ex. M. Kadakia opposed Epson's letter motion.

49. On January 20, 2023, the Parties submitted a Joint List of Remaining Issues to be Resolved, which included the following: "[w]hether the arbitrator exceeded her authority in making improper factual determinations in adjudicating the motion for summary adjudication." Brodsky Decl., ¶ 18, Ex. N.

50. Following supplemental briefing as to the total award, additional oral argument was held February 16, 2023. During the hearing, Epson reiterated its objection to the Arbitrator's Order and repeatedly requested that it be permitted to

submit its contrary evidence into the record for the Arbitrator's consideration. *See* Brodsky Decl., ¶ 19.

51. Epson's requests to submit its evidence and for reconsideration of the Arbitrator's Order were repeatedly denied.

52. The Arbitrator issued her Final Award on June 19, 2023. Brodsky Decl., ¶ 20, Ex. O. However, because the Arbitrator's Final Award contained numerous grammatical and clerical errors, including failing to include a total final award, Kadakia requested clarification from the Arbitrator.

53. The Arbitrator issued an Amended Final Award on July 13, 2023. Brodsky Decl., ¶ 16, Ex. L.

54. The Arbitrator's Amended Final Award awarded Kadakia $258,075.00, including 1) damages, 2) reasonable attorneys' fees, and 3) costs.

55. However, because the Arbitrator's Order made improper factual determinations, and, in so doing, the Arbitrator precluded Epson from presenting critical evidence, including witness testimony, regarding the central factual disputes in the case, the Final Award must be vacated pursuant to 9 U.S.C. § 10.

## **FIRST CAUSE OF ACTION**
### **(Vacatur of Arbitration Award)**

56. Epson repeats and realleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

57. As set forth above, Epson was a party to the Arbitration and was prejudiced by the Arbitrator, who made improper factual determinations in ruling on Epson's Motion for Summary Adjudication and precluded Epson from presenting critical evidence pertinent and material to the controversy.

58. Pursuant to 9 U.S.C. § 10, the Arbitrator's Final Award must be vacated.

59. Epson has brought this application within 90 days of the delivery of the Final Award on July 13, 2023.

60. By reason of the foregoing, Epson is entitled to an order vacating the Final Award pursuant to 9 U.S.C. § 10, and a rehearing and determination of the arbitrated claims before a different arbitrator or arbitrators.

### PRAYER FOR RELIEF

WHEREFORE, for the reasons stated herein, and in Epson's memorandum of law filed in support hereof, Epson America, Inc. respectfully requests that this Court enter an Order and Judgment pursuant to 9 U.S.C. § 10:

a) Vacating the Amended Final Award dated July 13, 2023;

b) Granting a rehearing and determination of the arbitrated claims before a newly-appointed arbitrator or arbitrators; and

c) Granting such other and further relief as the Court may deem just and proper.

K&L GATES LLP

Dated: September 18, 2023   By: */s/ Damon M. Pitt*
       Attorney for Petitioner
       Epson America, Inc.